UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LUCIAN PETRILLO,<br>        *Petitioner*,<br>        *v.*<br>UNITED STATES OF AMERICA,<br>        *Respondent.* | Civil No. 3:08-cv-1204 (JBA)<br><br>November 25, 2015 |

**RULING ON PETITIONER'S AMENDED MOTION UNDER § 2255**

On January 20, 2015, this Court denied Petitioner Lucian Petrillo's Motion [Doc. # 32] to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 on the grounds that Mr. Petrillo had waived his right to collaterally attack his sentence in his Plea Agreement. (Order Denying § 2255 Pet. [Doc. # 47] at 1.) On March 18, 2015, the parties jointly moved for reconsideration of that ruling, as the Government "no longer [sought] to enforce the collateral attack[] waiver" as to claims of ineffective assistance of counsel. (Jt. Mot. Recons. [Doc. # 48] at 1.) The Court granted the parties' motion on March 19, 2015. (Order Granting Jt. Mot. Recons. [Doc. # 49] at 1.) Petitioner filed supplemental briefing [Doc. # 51] on April 30, 2015, and then a motion to amend [Doc. # 59] his § 2255 petition in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). The Government opposes[1] [Doc. # 64]. For the reasons that follow, Petitioner's motion to amend his petition and his petition are GRANTED.

I.      **Background**

On December 13, 2005, Mr. Petrillo was indicted on three counts of bank robbery, in violation of 18 U.S.C. § 2113(a), and four counts of aggravated bank robbery, in violation of 18

---

[1] The Government does not appear to oppose Petitioner's request to amend his petition. Rather, the Government opposes the granting of Petitioner's amended petition.

U.S.C. §§ 2113(a) and (d), arising out of a spree of seven bank robberies he committed between February 14, 2005 and March 14, 2005.  On August 31, 2006, after a Rule 11 hearing, Mr. Petrillo pled guilty, pursuant to a plea agreement, to all seven counts. On November 21, 2006, this Court, on the basis of the parties' agreement that Mr. Petrillo was a career offender under the sentencing guidelines, sentenced Mr. Petrillo to 188 months on all counts, to run concurrently. Mr. Petrillo immediately appealed, but his appeal was dismissed [Doc. # 41] by the Second Circuit on September 17, 2008 as barred by the waiver of appellate rights contained in his plea agreement.

## II.    Discussion

Section 2255 allows prisoners in federal custody to move for their sentences to be vacated, set aside, or corrected if their "sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Because Mr. Petrillo raises distinct arguments in his first and second amended petitions, each will be addressed separately.[2]

### A.  Arguments From the First Amended Petition [Doc. # 32]

In his first Amended Petition, Mr. Petrillo argues that he was sentenced in violation of his Sixth Amendment right to effective assistance of counsel. A petitioner seeking to bring an ineffective assistance claim must satisfy two prongs: (1) "the defendant must show that counsel's representation fell below an objective standard of reasonableness;" and (2) the defendant must demonstrate that "any deficiencies in counsel's performance [were] prejudicial to the defense."

---

[2] It appears that Mr. Petrillo intends his most recent petition [Doc. # 59] to supplement rather than supplant his prior petition [Doc. # 32]. (*See* Mem. Supp. Mot. to Amend [Doc. # 59-1] at 1 ("By the Second Amended Motion, Petitioner intends to *include* a claim that his sentence can no longer stand due to a new substantive rule . . . ." (emphasis added).)

*Strickland v. Washington*, 466 U.S. 668, 688 & 692 (1984).  A court assessing such a claim "must be highly deferential" to counsel, must make "every effort . . .  to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time," and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.

Petitioner makes three claims of ineffective assistance. The Court has already rejected [Doc. # 47] the first claim, ineffective assistance of counsel with regard to counsel's explanation to Petitioner of the details of the collateral attack waiver. Petitioner's second claim is that "his counsel did not investigate his mental health and fully present that issue to the Court as a mitigating factor at sentencing." (Am. § 2255 Pet. at 5.) Petitioner's final argument is that his counsel was ineffective in acquiescing at sentencing to a career offender designation. (*Id.* at 6.) The Government opposes Petitioner's motion, arguing that Petitioner's trial counsel acted within the objective reasonableness standard, and even if he did not, Petitioner has not established prejudice.

### 1.  Mental Health History

Petitioner contends that his counsel should have highlighted his mental health history as a mitigating factor at sentencing, and that his counsel was ineffective for failing to do so. Petitioner asserts that at the time of his criminal conduct, he had a mental illness that likely influenced his criminal conduct; that his counsel should have obtained an expert regarding this issue; and that such expert would likely have been able to relate his drug addiction to his mental health illness. (Suppl. Am. § 2255 Pet. [Doc. # 51] at 8.) In support of this argument, Petitioner offers a statement from a BOP treatment provider asserting that Petitioner's mental health

treatment in prison influenced him to make positive changes, and it is possible that it "may have influenced him to make better decisions were he receiving it in the past." (*Id.* at 6.) Mr. Petrillo maintains that the opinion from the BOP treatment provider undermines confidence in the sentencing outcome and "compel[s] vacating the sentence and conducting a resentencing." (*Id.* at 8.)

This argument, however, fails to satisfy both the performance and prejudice prongs of *Strickland*. With respect to the performance component of *Strickland*, counsel acted reasonably in choosing a strategy that did not focus on Petitioner's mental health. Instead of attempting to illustrate Petitioner's history of traumatic events and mental health problems as mitigating factors, counsel emphasized Petitioner's drug addiction. (Pet'r's Att'y's Aff. [Doc. # 56] ¶ 5.) According to his testimony, counsel sought to portray the robberies as aberrant behavior caused by Petitioner's relapse with drugs, and he believed that bringing up a history of mental illness would have undermined that argument. (*Id.* ¶ 6.)

It is not ineffective assistance of counsel for an attorney to make the decision to promote one mitigating factor at sentencing over another. *Strickland*, 466 U.S. at 699. In fact, such a strategic choice is "virtually unchallengeable." *Id.* at 690. Counsel claims that Petitioner never told him that his past emotional trauma was in any way linked to his spree of robberies, and counsel exercised his professional judgment in focusing on Petitioner's drug addiction rather than his mental health. (Pet'r's Att'y's Aff. ¶ 4.) The Court "must be highly deferential" to counsel's judgment, and counsel's strategic decision here was within "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Petitioner also fails to establish the prejudice component of *Strickland*. To satisfy this prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Petitioner fails to meet his burden. The statement by the BOP treatment provider is that treatment *may have* influenced Petitioner to make better decisions in the past. Even if counsel were able to find an expert to assert such claims, a more thorough investigation or presentation of the issue of Petitioner's mental health at sentencing likely would not have altered the outcome here. As demonstrated by the Court's comments at sentencing, the Court already knew about Petitioner's traumatic past and mental illness from the Presentence Report (PSR ¶¶ 123, 125), and rejected it as a basis for a lower sentence (Sent. Tr., Ex. C to Gov't's Response Order to Show Cause [Doc. # 6] at 34 ("There are undoubtedly tragedies reflected in Mr. Petrillo's background. They are tragedies that cause serious coping problems. They are tragedies that have to be moved beyond; they cannot anchor you down and drag you down, and they cannot be drowned with substances.")). Further argument on the point would not have made any difference in the sentence of the Court.

### 2.  Career Offender Status[3]

When Petitioner's counsel reached a plea bargain with the Government, he explicitly left open the question of whether Mr. Petrillo should be sentenced as a career offender under § 4B1.2

---

[3] While some of the caselaw cited in this section interprets "crime of violence" under the Armed Career Criminal Act ("ACCA"), rather than under § 4B1.2, "the Act's definition of 'violent felony,' 18 U.S.C. § 924(e)(2)(B), is identical in all relevant respects to the Guidelines' definition of 'crime of violence,' U.S.S.G. § 4B1.2(a)." *United States v. Walker*, 595 F.3d 441, 443 n.1 (2d Cir. 2010) (citing *United States v. Palmer*, 68 F.3d 52, 55 (2d Cir. 1995)).  For this reason, the Second Circuit deems "cases interpreting the ACCA's definition of 'violent felony' . . . highly persuasive in interpreting the Guidelines' definition of 'crime of violence.'" *United States v. Reyes*, 691 F.3d 453, 458 n.1 (2d Cir. 2012).

of the Guidelines. *See United States v. Petrillo*, No. 3:05-cr-00312 (JBA), Plea Agmt. [Doc. # 25] at 8 ("The Government and the defendant have no agreement as to whether defendant is a career offender pursuant to U.S.S.G. § 4B1.1."). In his sentencing memorandum and at sentencing, however, Petitioner's counsel conceded that "[i]n fact, Mr. Petrillo is, and the presentence report finds, that Mr. Petrillo is technically a career offender." *Id.*, Def.'s Sent. Mem. [Doc. # 30] at 2. (*See also* Sent. Tr. at 9–10 ("[Q.] Am I correct that you do not disagree that a proper application of the guidelines in their advisory role considers Mr. Petrillo as a career offender?" [Pet'r's Att'y:] That is correct, your Honor.").) The Court, relying on the parties' agreement that Mr. Petrillo was a career offender, proceeded to sentence him as such. (*See* Sent. Tr. at 34 ("[T]he Court is not going to depart or second guess whether [the § 53a-167c conviction] qualifies [as a predicate] for career offender [designation], which is undisputed by the parties.").)

According to the Guidelines, a defendant is a career offender if:

(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a *crime of violence* or a controlled substance offense.

U.S.S.G. § 4B1.1 (emphasis added). A "crime of violence" is defined as:

any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--
(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

U.S.S.G. § 4B1.2(a) (emphasis added). The last part of § 4B1.2(a)(2), "conduct that presents a serious potential risk of physical injury to another," is known as the residual clause.

When determining if a conviction constitutes a "crime of violence," the Second Circuit employs a two-step "modified categorical approach." *United States v. Reyes*, 691 F.3d 453, 458 (2d Cir. 2012) (quoting *Walker*, 595 F.3d at 443). The first step (the categorical inquiry) is to look at the statute as a whole to determine if the statute exclusively criminalizes conduct that falls within U.S.S.G. § 4B1.2(a)(2)'s definition of a violent crime. *Id.* at 458. "If so, the inquiry ends." *Id.* If the statute also criminalizes conduct that does not qualify as a crime of violence then the government carries the burden of proving that the plea necessarily rested on facts identifying the conviction as a predicate offense (the modified categorical inquiry). *Id.* (quoting *Walker*, 595 F.3d at 444). "The modified categorical approach is merely a tool for district courts to use to 'determine which alternative element in a divisible statute formed the basis of the defendant's conviction.'" *United States v. Barker*, 723 F.3d 315, 320 (2d Cir. 2013) (quoting *Descamps v. United States*, 133 S. Ct. 2276, 2293 (2013)).

Petitioner contends that his counsel should have challenged one of the convictions that served as a predicate to his career offender designation—a 1996 conviction under Conn. Gen. Stat. § 53a-167c[4]—rather than acquiescing to the career offender designation.

---

[4] In 1996, when Mr. Petrillo pled guilty to Conn. Gen. Stat. § 53a-167c, it read:

(a) A person is guilty of assault of a peace officer, fireman, employee of an emergency medical service organization, emergency room physician or nurse, employee of the department of correction, employee or member of the board of parole or probation officer when, with intent to prevent a reasonably identifiable peace officer . . . from performing his duty, and while such peace officer . . . is acting in the performance of his duties, (1) he causes physical injury to such peace officer . . . or (2) he throws or hurls, or causes to be thrown or hurled, any rock, bottle, can or other article, object or missile of any kind capable of causing physical harm, damage or injury, at such peace officer . . . or (3) he uses or causes to be used any mace, tear gas or any like or similar deleterious agent against such peace officer . . . or (4) he throws or hurls, or causes to be thrown or hurled, any

The Government's response is twofold: (1) that Petitioner's counsel acted reasonably under existing precedent; and (2) that Conn. Gen. Stat. § 53a-167c is categorically a crime of violence under the residual clause, § 4B1.2(a)(2), and therefore Petitioner was not prejudiced by counsel's acquiescence to the career offender designation.

### a.   Whether Petitioner's Counsel Acted Reasonably

A court assessing the first prong of the *Strickland* analysis, the reasonableness of counsel's conduct, "must be highly deferential" to counsel, and must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "Counsel is not required to forecast changes in the governing law." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). However, "[a] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (interpreting the reasonableness requirement of *Strickland*) (internal citations omitted). "[T]he amount by which a defendant's sentence is increased by a particular decision may be a factor to consider in determining whether counsel's performance in failing to argue the point constitutes ineffective assistance." *Glover v. United States*, 531 U.S. 198, 204 (2001).

In 2006, when Petitioner was sentenced, there were two cases within this Circuit that directly addressed whether § 53a-167c is a crime of violence. The first was *Canada v. Gonzales*, where the court, employing a modified categorical approach to parse subsection (a)(1) of § 53a-

---

paint, dye or other like or similar staining, discoloring or coloring agent or any type of offensive or noxious liquid, agent or substance at such peace officer. . . .

8

167c, determined that assault on a police officer in violation of § 53a-167c(a)(1) is a crime of violence.[5] 448 F.3d 560, 568 (2d Cir. 2006). *Canada* did not address the other subsections of § 53a-167c. *Id.* The second case, *Warren v. United States*, held that where "[t]he record is clear" that a prior conviction of attempted assault of a police officer "involved the attempted use of physical force" against the officer, the offense "has as an element the use, attempted use, or threatened use of physical force against the person of another," and is thus a crime of violence under § 4B1.2(a)(1). No. CIV. 3:01 CV 179 (AWT), 2005 WL 165385, at *9 (D. Conn., Jan. 25, 2005). *Warren*, however, interpreted § 4B1.2(a)(1), whereas the Government here contends that Mr. Petrillo's 1996 conviction is a crime of violence under § 4B1.2(a)(2).

Petitioner argues that because *Canada* had only declared that § 53a-167c(a)(1) was a crime of violence and the record does not reveal which subsection Petitioner was convicted under,[6] his counsel's failure to challenge the career offender designation based on his conviction constituted ineffective assistance. (Suppl. Am. § 2255 Pet. at 9, 10.) For its part, the Government maintains that "[r]easonable counsel in 2006, reviewing then-existing precedent, would have concluded that attempted assault of a police officer was a 'crime of violence' for career offender

---

[5] *Canada* did not interpret § 4B1.2, but rather 18 U.S.C. § 16(b), which defines "crime of violence" as, *inter alia*, "any other offenses that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." However, because both sections utilize similar language, the Second Circuit has found caselaw interpreting § 16(b) "to be instructive" in analyzing crimes of violence under the Guidelines and ACCA. *See United States v. Brown*, 629 F.3d 290, 296 n.4 (2d Cir. 2011) ("Although *Canada's* holding that assaulting a police officer in violation of this statute is a "crime of violence" under Section 16(b) does not control our inquiry under the ACCA's residual clause, the issue in *Canada* is similar to the question presented here, and we find that case's analysis of CGS § 53a–167c(a)(1) to be instructive.").

[6] Petitioner pled guilty to § 53a-167c by an Alford plea and did not stipulate to any facts. (Suppl. Am. § 2255 Pet. at 11.)

purposes." (Gov't Suppl. Opp'n [Doc. # 53] at 12.) It reasons that *Canada* was "sufficiently analogous" to permit defense counsel to reasonably conclude that § 53a-167c categorically constituted a crime of violence. (*Id.* at 13.)

The Court is not persuaded. Only § 53a-167c(a)(1), the actual causing of physical injury to an officer, had been determined to be a crime of violence. *See Canada*, 448 F.3d at 568. No court either before 2006 or since has declared the entirety of § 53a-167c to be categorically a crime a violence. Indeed, by utilizing a modified categorical inquiry, the court in *Canada* seemed to recognize that there may be subsections of the statute that are *not* categorically crimes of violence. *See id.*; *Reyes*, 691 F.3d at 458 ("The first step requires the court to determine whether the statute of the prior conviction criminalizes conduct that falls exclusively within the Guidelines' definition of 'crime of violence.'  If so, the inquiry ends." (internal quotation marks and citations omitted).).

Subsection four of § 53a-167c(a), for example, prohibits the throwing or hurling of "any paint, dye or other like or similar staining, discoloring or coloring agent" at a "peace officer, fireman, employee of an emergency medical service organization, emergency room physician or nurse, employee of the department of correction, employee or member of the board of parole or probation officer" "with intent to prevent" such person from performing his or her duties. Hurling paint or dye at an officer, fireman, physician, nurse, or probation officer, "while certainly offensive and worthy of criminal punishment in its own right, is materially different from either conduct that causes physical injury or conduct that includes hurling a bottle or other object, *capable of causing harm*, at an officer." *State v. Jay*, 124 Conn. App. 294, 331 (2010) (holding that "hurling saliva" does not "by [its] nature, necessarily obstruct, resist, hinder or endanger an

officer," unlike "conduct that includes hurling a bottle or other object, *capable of causing harm*, at

an officer"). The former does not inherently carry a serious potential risk of physical injury.

Because there is at least one subsection of § 53a-167c(a) that prohibits conduct that may

fall outside § 4B1.2's definition of a violent felony, the Court next considers "whether the

government has shown that [Mr. Petrillo's] plea 'necessarily' rested on the fact identifying the

conviction as a predicate offense." *United States v. Savage*, 542 F.3d 959, 966 (2d Cir. 2008).  The

Supreme Court has "identified two types of proof, relevant here, that might suffice to establish

that a plea 'necessarily' rested on the elements of a predicate offense: (i) proof that the defendant

admitted to predicate conduct when confirming the factual basis for a valid plea; (ii) proof that

the charge was narrowed to include only predicate conduct." *Id.* (citing *Shepard v. United States*,

544 U.S. 13, 21–22 (2005)).

"[I]n the context of a conviction based on a plea, the inquiry is 'limited to the terms of the

charging document, the terms of a plea agreement or transcript of colloquy between judge and

defendant in which the factual basis for the plea was confirmed by the defendant, or to some

comparable judicial record of this information.'" *Id.* (quoting *Shepard*, 544 U.S. at 26). While a

court may examine the pre-sentencing report (PSR) utilized by the convicting court, it may not

consider "a current presentence report prepared for a *sentencing court* presented with the

enhancement issue." *United States v. Palmer*, 68 F.3d 52, 58 (2d Cir. 1995), *as amended on reh'g*

(Dec. 27, 1995) (emphasis in original).

In this case, because Mr. Petrillo "entered an *Alford* plea in which he refused 'to admit his

participation in the acts constituting the crime,' [*North Carolina v.*] *Alford*, 400 U.S. [25, 37

(1970)], [he] did not, by design, confirm the factual basis for his plea. Thus, the government

cannot rely on any factual admissions during the plea colloquy to establish the predicate nature

11

of [Mr. Petrillo's] conviction."[7] *Savage*, 542 F.3d at 966 (citing *Shepard*, 544 U.S. at 20). The Government argues, however, that the plea colloquy does establish that Mr. Petrillo pled to a narrowed offense, attempted assault on a police officer. (*See* Gov't's Suppl. Opp'n at 12 n.5.) During the plea colloquy, the prosecutor addressed Mr. Petrillo as follows: "Mr. Petrillo, you're charged on a substitute information with attempted assault on a police officer. To that charge what is your plea?" (State Ct. Plea Colloquy, Ex. B to Gov't's Response Order to Show Cause at 3.) Mr. Petrillo replied: "Guilty."[8] (*Id.*) Even if this exchange could be read to narrow the charge to which Mr. Petrillo pled to attempted assault *on a police officer*, it does not establish which subsection of § 53-167c Mr. Petrillo pled guilty to violating. Because under Connecticut law, attempted assault on a police officer includes such arguably non-violent acts as hurling paint or dye at an officer, a reasonable attorney in 2006 would not have concluded that the conviction qualified as a violent felony under § 4B1.2's residual clause.[9]

Although there was no binding precedent upon which Mr. Petrillo's counsel could have relied, the question of whether § 53a-167c(a) was categorically a crime of violence was far from

---

[7] The Government relies on the plea colloquy because it has been "unable to locate the charging document (i.e. the substitute information to which the defendant pled) or a certified copy of the attempted assault conviction at issue." (Gov't's Opp'n Am. § 2255 Pet. at 12 n.5.)

[8] Mr. Petrillo's counsel clarified both at the beginning and end of the hearing that Mr. Petrillo's plea was under the *Alford* doctrine.  (*See* State Ct. Plea Colloquy at 2, 9.)

[9] Although Petitioner's attorney sought a 151-month sentence, he did so by seeking a non-guidelines sentence or downward departure. *See United States v. Petrillo*, No. 3:05-cr-00312 (JBA), Def.'s Sent. Mem. at 2–8. Petitioner's attorney explains his decision not to challenge the career offender designation by stating simply: "I argued in my sentencing memorandum for a 151 month sentence based on a variety of reasons. 151 months was the low end of Mr. Petrillo's sentencing guidelines range if he were not deemed a career offender." (Pet'r's Att'y's Aff. ¶ 8.)

decided,[10] and relying on *Canada*, *Shepard*, and *Palmer*, he could have made a strong argument that § 53-167c(a) is not categorically a crime a violence. Further, unlike a situation in which counsel is plea bargaining where there might have been strategic reasons not to pursue a particular avenue, here, the plea bargain had already been struck without any agreement on the career offender enhancement and long before Mr. Petrillo's counsel conceded at sentencing that he was a career offender. (*See* Fed. Ct. Plea Colloquy, Ex. A to Gov't's Response Order to Show Cause at 21 ("[A]t this point the parties do not have an agreement as to whether the defendant is a career offender.").) Thus, Mr. Petrillo's counsel had nothing to lose in disputing the career offender designation and nothing to gain by his concession, particularly because the effect of that concession was a 37-month increase in Mr. Petrillo's guideline range. In these circumstances, Mr. Petrillo's counsel's failure to take issue with the career offender designation was not reasonable.

### b.  Whether Petitioner was Prejudiced by Counsel's Acquiescence to the Career Offender Designation

Turning to the prejudice component of the *Strickland* test, "a court must determine whether, absent counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different . . . . The outcome determination, unlike the performance determination, may be made with the benefit of hindsight." *Mayo*, 13 F.3d at 534 (citing *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993)) (emphasis added); *see also Mosby v. Senkowski*, 470 F.3d 515, 524 (2d Cir. 2006) ("[T]he Supreme Court has held that current law

---

[10] Indeed, at sentencing, the Government conceded its doubts about whether Petitioner's § 53a-167c conviction could serve as a predicate to career offender status. *United States v. Petrillo*, No. 3:05-cr-00312 (JBA), Gov't's Sent. Mem. [Doc. # 34] at 6–7 n.3. ("While there is no doubt as to the robbery conviction, the assault conviction has always given the Government some pause. While the facts technically meet the elements of the assault statute, there was some question of whether the incident really was appropriate as a career offender predicate.").

should be applied retroactively for purposes of determining whether a party has demonstrated prejudice under *Strickland*'s second prong.").

The Government appears to argue that Mr. Petrillo was not prejudiced by any error on his counsel's part because § 53a-167c(a) is categorically a crime of violence under the residual clause. (*See* Gov't's Opp'n Am. § 2255 Pet. at 13.) However, the Supreme Court's recent decision in *Johnson v. United States*, 135 S.Ct. 2251, 2257 (2015) finding the residual clause in ACCA to be unconstitutionally vague, casts doubt on the continuing viability of that argument.

Although *Johnson* was concerned with the ACCA, not the Sentencing Guidelines, "the Act's definition of 'violent felony,' 18 U.S.C. § 924(e)(2)(B), is identical in all relevant respects to the Guidelines' definition of 'crime of violence,' U.S.S.G. § 4B1.2(a)."[11] *Walker*, 595 F.3d at 443 n.1 (2d Cir. 2010) (citing *Palmer*, 68 F.3d at 55). Moreover, the Government concedes that "in light of *Peugh*'s analysis of the guidelines in applying *Ex Post Facto* principles,[12] and *Johnson*'s

---

[11] Further, after *Johnson*, the Supreme Court vacated and remanded for reconsideration in light of *Johnson* the judgment in *United States v. Maldonado*, in which the Appellant had challenged his career offender designation under the Guidelines. 581 F. App'x 19, 22–23 (2d Cir. 2014), *vacated and remanded*, 135 S.Ct. 2929 (2015). Justice Alito noted in concurrence that the Court had not "differentiated between cases in which the petitioner would be entitled to relief . . . and cases in which relief would not be warranted for a procedural reason." *Id.* He did not state, however, that the Court had not differentiated between cases in which the petitioner would not be entitled to relief because he was sentenced pursuant to the Guidelines, rather than the ACCA.

[12] In *Peugh v. United States*, the Supreme Court held that "there is an *ex post facto* violation when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense." 133 S.Ct. 2072, 2078 (2013). In so holding, the Court rejected the government's argument that there could be no constitutional violation because the "Guidelines lack sufficient legal effect to attain the status of 'law' within the meaning of the *Ex Post Facto* Clause," reasoning that "[d]istrict courts must begin their sentencing analysis with the Guidelines . . . and those Guidelines will anchor both the district court's discretion and the appellate review process." *Id.* at 2086, 2087. The Court added that, given the centrality of the

articulation of vagueness doctrine in the sentencing context, *today, it is established*[13] *that the Sentencing Guidelines must meet due process vagueness standards*."[14] (Gov't's Opp'n Mot. to

---

Guidelines in the federal sentencing scheme, *see id.* at 2083, retrospective increases in the measure of a defendant's punishment under the Guidelines "raises clear *ex post facto* concerns. We have previously recognized, for instance, that a defendant charged with an increased punishment for his crime is likely to feel enhanced pressure to plead guilty. This pressure does not disappear simply because the Guidelines range is advisory; the defendant will be aware that the range is intended to, and usually does, exert controlling influence on the sentence that the court will impose." *Id.* at 2085 (internal citations omitted); *see also Gall v. United States*, 552 U.S. 38, 49 (2007) ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.").

[13] In fact, there is some dispute on this point. The Tenth Circuit recently held that the residual clause in the Guidelines is unconstitutional. *See United States v. Madrid*, No. 14-2159, 2015 WL 6647060, at *4 (10th Cir. Nov. 2, 2015). The Sixth and Eighth Circuits, while not going so far as to hold the residual clause constitutional, have vacated district court judgments relying on the Guidelines' residual clause in light of *Johnson* and the Supreme Court's subsequent vacatur of judgments relying on the Guidelines' residual clause. *See United States v. Harbin*, 610 F. App'x 562 (6th Cir. 2015); *United States v. Darden*, 605 F. App'x 545 (6th Cir. 2015); *United States v. Taylor*, No. 14-2635, 2015 WL 5918562, at *1–2 (8th Cir. Oct. 9, 2015). In contrast, the Eleventh Circuit has held that "*Johnson* says and decided nothing about career-offender enhancements under the Sentencing Guidelines," and accordingly, the Eleventh Circuit has declined to reconsider the sentences of Guidelines career offenders. *Beckles v. United States*, 616 F. App'x 415, 416 (11th Cir. 2015); *see also Denson v. United States*, No. 14-10211, 2015 WL 5719466, at *4 (11th Cir. Sept. 30, 2015) ("The vagueness doctrine in *Johnson* does not apply to the advisory sentencing guidelines." (internal quotation marks, citations, and brackets omitted)); *United States v. Matchett*, 802 F.3d 1185, 1194 (11th Cir. 2015) (same). No other circuit has weighed in yet. In spite of this uncertainty, there is at least a "reasonable probability" that Mr. Petrillo's sentence would be different if decided today and if his counsel had not conceded that he was a career offender. *Strickland* requires no more.

[14] Prior to *Johnson*, four circuits had held that the Guidelines were not subject to vagueness challenges. *See United States v. Tichenor*, 683 F.3d 358, 364 (7th Cir. 2012) (citing *United States v. Brierton*, 165 F.3d 1133, 1139 (7th Cir. 1999)); *United States v. Velasquez*, No. 06-41469, 2007 WL 2437961, at *1 (5th Cir. Aug. 21, 2007) (citing *United States v. Pearson*, 910 F.2d 221, 223 (5th Cir. 1990)); *United States v. Smith*, 73 F.3d 1414, 1418 (6th Cir. 1996) (citing *United States v. Salas*, No. 93-5897, 1994 WL 24982, at *2 (6th Cir. Jan. 27, 1994)); *United States v.*

Amend [Doc. # 64] at 17 (emphasis added).) Because the Government acknowledges that the Guidelines may be unconstitutionally vague and because the Supreme Court recently held that language identical to § 4B1.2 is unconstitutionally vague, by the Government's own admission, if Mr. Petrillo were sentenced today, he would not be sentenced as a career offender. Had Mr. Petrillo not been sentenced as a career offender, he would have faced an advisory Guidelines range of 151 to 188 months, rather than 188 to 235 months. Mr. Petrillo has thus shown that he was prejudiced by his counsel's failure to claim he was not a career offender. *See Reyes*, 691 F.3d at 460 ("The district court's error in sentencing Reyes as a career offender on this record affected his substantial rights because it resulted in an elevated offense level under the Guidelines."); *Glover v. United States*, 531 U.S. 198, 203 (2001) (stating that "any amount of actual jail time has Sixth Amendment significance" and any increase in jail time due to counsel's error, no matter

---

*Wivell*, 893 F.2d 156, 160 (8th Cir. 1990). Since *Johnson*, however, the Eighth Circuit has stated that "[t]he reasoning in *Wivell* that the guidelines cannot be unconstitutionally vague because they do not proscribe conduct is doubtful." Four circuits have held (prior to *Johnson*, and prior to *Booker*) explicitly or implicitly (by applying the vagueness doctrine to the Guidelines without explicitly stating that it applies), that the Guidelines are subject to vagueness challenges. *See United States v. Rearden*, 349 F.3d 608, 614 (9th Cir. 2003) (citing *United States v. Johnson*, 130 F.3d 1352, 1354 (9th Cir. 1997)); *United States v. Rutherford*, 175 F.3d 889, 906 (11th Cir. 1999); *United States v. Moore*, 107 F.3d 868, at *1 (4th Cir. 1997). The Second Circuit and the Tenth Circuit have explicitly declined to take positions on the issue. *See United States v. Maurer*, 639 F.3d 72, 77 (10th Cir. 2011); *United States v. Mena*, 342 F. App'x 656, 658 (2d Cir. 2009). Although the Supreme Court has not spoken directly to the question of whether the Guidelines are subject to vagueness challenges, some courts, like the Ninth Circuit, *see Johnson*, 130 F.3d at 1354, have read *United States v. Batchelder*, 442 U.S. 114 (1979) as compelling the conclusion that the Supreme Court would subject the Guidelines to vagueness challenges. The relevant statement in *Batchelder*, a pre-Guidelines case is the following: "A criminal statute is . . . invalid if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden. So too, vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute." *Id.* at 123 (internal quotation marks and citations omitted).

16

how small, establishes prejudice). Having established both prongs of the *Strickland* analysis, Mr. Petrillo is entitled to vacatur of his sentence and resentencing in light of *Johnson*.[15]

### B.  Second Amended Petition [Doc. # 59]

Although it might not be necessary for the Court to reach the claims in Mr. Petrillo's second amended petition in light of its disposition of the original amended petition, for the sake of completeness, the Court finds that these arguments would not have been availing. In his most recent amended § 2255 petition, Mr. Petrillo argues that "his sentence can no longer stand due to a new substantive rule," announced in *Johnson*, "that retroactively impacts the sentencing determination that he is a 'career offender' under the Sentencing Guidelines." (Mem. Supp. Mot. to Amend at 1.) The Government responds that although it has decided not to enforce collateral attack waivers with regard to ineffective assistance of counsel claims, "[t]he present claim . . . is not a claim of ineffective assistance, and accordingly," it is barred by the waiver in Mr. Petrillo's plea agreement. (*Id.* at 2.)

The Second Circuit has "held that knowing and voluntary waivers of the right to litigate pursuant to section 2255 are valid and enforceable," and "[t]he circumstances under which the Court of Appeals has declined to enforce waivers of appellate rights are very limited." *Garafola v. United States*, 909 F. Supp. 2d 313, 323 (S.D.N.Y. 2012) (citing *Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195 (2d Cir. 2002)).  "As the Court of Appeals noted in *Gomez-Perez*,

---

[15] The Court notes that the United States Sentencing Commission is currently seeking comments on revisions to the definition of "crime of violence" in § 4B1.2 in light of *Johnson*. "Consistent with *Johnson*, the proposal would eliminate from the guideline definition of 'crime of violence' the residual clause . . . ." News Release, U.S. Sentencing Commission, *U.S. Sentencing Commission Seeks Comment on Revisions to Definitions of Crime of Violence* (Aug. 7, 2015), http://www.ussc.gov/sites/default/files/pdf/news/press-releases-and-news-advisories/press-releases/20150807_Press_Release.pdf.

the exceptions include situations [in which] 'the waiver was not made knowingly, voluntarily, and competently[;] . . . the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases[;] . . . the government breached the plea agreement[;] or . . . the sentencing court failed to enunciate any rationale for the defendant's sentence . . . .'" *Id.* at 323–24 (quoting *United States v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir. 2000)).

Mr. Petrillo appears to argue that the collateral attack waiver in his plea agreement is nonetheless unenforceable because (a) his sentence was illegal (Reply [Doc. # 69] at 15); (b) the waiver "did not contemplate wholesale changes in the law that essentially travel back in time to the moment of sentencing" (*id.* at 16); and (c) the waiver was not knowing and voluntary because Mr. Petrillo did not know "that his collateral attack waiver . . . included any future changes in the law" (*id.* at 17). These arguments, however, ignore established Second Circuit law.

In *United States v. Morgan*, the Second Circuit considered whether the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005) holding that the Guidelines were advisory and not mandatory, rendered the defendant's appeal waiver unenforceable as to the issue of sentencing. 406 F.3d 135 (2d Cir. 2005). The court held that the waiver remained enforceable, reasoning:

> The plea agreement process permitted Morgan and the government to allocate risk, to obtain benefits, to achieve finality and to save resources. This process is at the very center of the criminal justice system. If either party were able to secure its benefits while making its obligations contingent, the utility of plea agreements would disappear.
>
> Second, we see no indication that the parties intended for the appeal waiver not to apply to issues arising after, as well as before, the waiver. . . . That Morgan did not . . . have knowledge of his rights under *Booker/Fanfan* makes no material difference. His inability to foresee that subsequently decided cases would create

18

new appeal issues does not supply a basis for failing to enforce an appeal waiver. On the contrary, the possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements.

*Id.* at 137–38 (internal citations and footnotes omitted). Of particular relevance here, the Second Circuit added in *United States v. Haynes* that "[w]hile ignorance of then-existing rights can invalidate a plea agreement in some cases, ignorance of future rights is unavoidable and not a basis for avoiding a plea agreement." 412 F.3d 37, 39 (2d Cir. 2005*); see also Adesina v. United States*, 461 F.2d 90, 96 (E.D.N.Y. 2006) ("Under the well-settled law of the Second Circuit, a valid waiver of the right to appeal or otherwise challenge a sentence is enforceable even as to subsequent changes in the law that were not anticipated at the time the waiver was made."). For all of these reasons, Mr. Petrillo is bound by his collateral attack waiver and is foreclosed from making the arguments he raises in his most recent amended petition.

## III.    Conclusion

For the foregoing reasons, Mr. Petrillo's Amended Motion [Doc. # 59] to Vacate, Set Aside, or Correct Sentence is granted insofar as his sentence will be corrected to eliminate the career offender enhancement, and he will be resentenced as a non-career offender. A re-sentencing date and briefing schedule will be set forthwith.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 25th day of November, 2015.